Good morning, Your Honors. I'm planning to spend the bulk of my time this morning discussing my client's eligibility for cancellation of removal, because I believe there's been some recent decisions of this Court and other courts that are very favorable to my client in that regard. But I just wanted to mention at the outset that I do not believe that my client was even properly found to be removable. He had a Fifth Amendment privilege to remain silent at his hearing, and I believe that that privilege was not respected by the immigration judge and by the counsel for the government. We attempted to assert that privilege and we objected, but my client was forced to testify, I believe, and I think that that was improper. But moving on to the question of cancellation of removal, I cited to the And that case goes into a discussion of the differences between the old form of relief for permanent residents that get into a jam that my client got into, and in the old days before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, a permanent resident had to only show seven years of lawful domicile to be eligible for relief if they were caught smuggling a person, which was the allegation against my client. In Cuevas-Gaspar, the Court, this Court, said that there's not that big of a difference really between the old system and the new system, at least the Cuevas-Gaspar Court looked at the congressional intent in amending that portion of the law in 1996 and concluded that Congress really didn't intend to narrow the eligibility requirements. Counsel, here's my problem with your argument, and I'm speaking, of course, only for myself. Your interpretation of the statutes is reasonable, but it's not the only possible interpretation of the statute, and the agency here has a written decision that comes out the other way. To what extent do we owe deference to that interpretation of the statute, and how do we know, how can we tell whether the agency intended to be making a binding interpretation? Well, I don't think deference is owed when the statute is plain on its face, and in this case, the statute says that a person needs to have been admitted in any status in order to be eligible for relief and have seven years after admission. And the question is whether he was ever admitted within the meaning of the statute, and the agency has discussed why it thinks that admitted has a limited meaning in this statute. So is their reading wholly improper? Well, the statute says admitted in any status. As I understand the government's argument, it seems that they're arguing that only a person admitted as a nonimmigrant would be begin accruing time towards the seven years of continuous residence. There is a case that says that it's a matter of Blanca Lara, the BIA case, where the BIA held that a person admitted as a nonimmigrant begins to accrue time. But only the nonimmigrant would be admitted. If Congress intended to limit the eligibility that much, it could have just said a person admitted as a nonimmigrant. But there's all kinds of other ways that people become legal, that they're inspected, they're found to be eligible to be immigrants. Your question, I mean, your answer to my question focuses, again, on your interpretation of the statute. But really, the focus of my question is on the effect of the board's differing interpretation of the statute. As I say, your interpretation is reasonable. But if their interpretation is at least permissible under the statute, I don't understand why we wouldn't have to give some deference to it. And I would like for you to talk about that question and whether the form of the order is one that would require or permit deference. Well, I think that there's always going to have to be some deference to the agency. I think the most important part of that question was the word form. The form, I'm sorry, I'm not sure I understand. The opinion was designated unpublished. And we have some familiarity with that ourselves as we, until the new rule, we still designate things as unpublished. The order contains reasoning and a result and explains the agency's version of the statute. So far, so good. But it was designated unpublished. Does that mean that the agency did not intend for it to be relied upon as an interpretation? Or what? What do we make of it? Well, I think, you know, my own experience is that that is the agency's interpretation. They have, there is no published opinion on it. But in other cases that I'm aware of, and the government's interpretation has always been, at least regarding family unity, which is what this case is about, that a person that had family unity benefits would not have been considered to be admitted. Okay. So I'm sorry, go ahead. No. I was going to say, so if I understand your answer to me, it is that although this is unpublished, it is the consistent, repeated interpretation of the statute that the agency has given without variation. Well, I don't know everything, but as far as I'm aware, that's been, that's always been there. I'm unaware of any case where they've taken it. Has the Board addressed this issue in any other published or unpublished decision? No, Your Honor, not that I'm aware of. It's the only case, correct? Yes, Your Honor. I believe so. Does the Board know the Board's policy with respect to unpublished opinions? They're not to be cited for, as precedent, although... Okay, and then what does that mean? We know what that means or meant in this court, that not only couldn't you cite it, you couldn't rely upon it for authority. Right. Does it mean the same thing in the BIA? Well, I'll tell you, you know, sometimes I go into immigration court with an unpublished decision and I show it to the immigration judge and nobody seems to get upset about that. Well, that was done under the old rule all the time in district court with unpublished Ninth Circuit opinion. But do you know one way or another, and there's no problem if you don't, but do you know one way or another what the BIA's position is with respect to the binding effect of unpublished opinions? My belief is that an unpublished opinion is not binding. But are you familiar with the practice manual that the board issues? Yes, I am. And there it says it characterizes unpublished decisions. Unpublished decisions are binding on the parties to the decision but are not considered precedent for unrelated cases. I think that's exactly right. Yeah, that'd be my understanding. And if it's in the manual, that must be the rule. So, but anyway, you know, and there's another, I mean, the government is arguing in their answering brief that family unity, which is the status that my client had since 1991, means nothing. I mean, he's still illegal, according to the government. This court just late last month in a case called Yepes Rosso v. Gonzalez discussed the family unity provisions. That came out on April 24th of this year. And it clearly says that a person in family unity is in the country legally, they have status. A person in family unity can work, cannot be deported, assuming that they don't break the law in some other way, and is even with advanced permission entitled to travel inside and outside the country. It's a quasi-legal status. And a person, in order to get family unity, has to be inspected, even though the inspection doesn't occur at the border. And there's cases of this court that say inspection doesn't necessarily have to occur at the border. A person in family unity is determined to be admissible as an immigrant. And, and I think this is really telling, the family unity beneficiary, when they finally adjust to permanent residence, do not have to pay the $1,000 penalty fee that everybody else pays who's in the country illegally. And my question to the government would be, you know, if the person's illegal, has no $1,000 fee like everybody else. You're down to about a minute. Did you want to save some time for rebuttal? I'll save that, Your Honor. Thank you. OK. We'll hear from the government at this time. Good morning, Your Honor. I'm Carol Federiga, I represent the respondent, Attorney General Gonzalez, in this matter. Good morning. Good morning. First, I'll address the question that Your Honor seemed to be interested in, which is the, of what deference is owed to an unpublished board decision. The board, I mean, the Chevron deference principles apply to all sorts of different types of agency interpretations, whether they're announced in regulations or through adjudicatory decisions, or there's various other types of interpretations that courts have granted deference to. So. Well, there's different, you know, different degrees of deference, depending upon the binding nature of the agency regulation or rule that's at issue. I don't know as it's been fully articulated in the courts, but I would agree that sort of something set forth in a regulation is probably worthy of more deference than something set forth in a less formal. I mean, that's what Meade said. I'm sorry, go ahead. That's what Meade said. Yeah. I was just going to say, there's Skid Row deference, Meade deference, and whatnot. Yes, you're right about that. So in this case, obviously, the board's interpretation was not set forward in a regulation or a binding adjudicatory decision. Right. It wasn't designated as precedent under the. Under the. That's correct. Under the formal published regulations that allow them to designate a decision as precedent on an issue that will be binding throughout the country on that particular issue. That's correct. That didn't happen here. That did not happen here. But nevertheless, it is an interpretation set forward by the board in an adjudicatory decision. So it is worthy of some deference as a permissible interpretation of the statute. Well, let me ask you this. What is persuasive about the discussion that's contained in the IJ's decision here? Well, in the. I mean, the board, the single member board's decision. I'm sorry. The board issued its own decision. Right. That's correct. I'm sorry. Yeah. Well, the the statute says that the issue is whether he was admitted in any status when he was in this volunteer in this. I can't think of the word right now. Family unity, family unity program. And the family unity program merely confers certain benefits on the people who are eligible. It does not change their status or give them any status in the United States. In fact, the provision of the of the act of the Immigration Act of 1990 is called the temporary stay of deportation and work. That's a status, isn't it? For certain eligible immigrants. It doesn't give them a legal status in the United States. It just is saying they're not going to be deported for a certain period. They're in a status of what is it? Delayed voluntary departure. Yeah. They're I guess you could say that's a that's. They're entitled to leave the country and they're if they do the proper paperwork, they can leave the country and come back and they return to that status. That's true. But that that does not mean they were admitted to the United States in in a formal in a formal status there. Well, does does does the admitted to any status mean you have to be admitted to the Uniteds? You know, as we think of of admission, it is entry at the border and inspection and all of that. That's the definition of admission in the statute in the Immigration Act, that it's inspection and entry by an immigration official at the border. But even the BIA and our court is not given that interpretation, a literal interpretation in every instance. Right. They've recognized that an admission for aliens who are here illegally, that they're originally I mean, aliens that originally entered illegally and then subsequently adjusted. And if they've never left the country, when's their admission? So the court has recognized that those people are admitted to the United States as of the date that they adjusted their status. And the board has held that also. And in this case, unlike the cases that are relied on by the petitioner, in this case, the petitioner did enter the United States illegally. So the first time that he obtained legal status here was when he adjusted his status. Prior to that, he had never been admitted at the border by an immigration official. He was allowed to. This is kind of unique, a unique status in all honesty. He's allowed to remain in the country. He's allowed to work. He's allowed to leave the country and to return to the country to this status. Pending, I gather, is an application for adjustment of status. Right. And the admission to family unity program, whatever it's called, can mature into lawful permanent status. I wouldn't say that, no. I mean, the application for adjustment of status is a separate process that he has to be going through in order to get the benefits under the family unity program. But just being in the family unity program itself does not mature to adjustment of status. The adjustment is separate. My question intended your answer. I didn't mean to mislead you. OK. When you can apply while in this status for LPR status. You have to actually, I think you have to have applied for LPR status before you can get benefits under the family unity program. So when you have it, that process is ongoing. Yeah. Yeah. The idea of the family unity program was that it was taking people so long to get their adjustment of status because the wait for visas was so long that this was a way of preserving the family unity while they underwent that, while that process dragged on for years. Counsel, I have one more question hearkening back to the place where we started on the decision. Opposing counsel seem to believe that there are other cases in which the board has taken this same interpretive view of the statute. Is this a unique interpretation just in this case or is there any way for us to know whether this is the board's position all the time? I mean, this this decision is signed only by one person, although it uses the royal we. Is this the board's interpretation in other cases as well? I don't know the answer to that, Your Honor. There are no published decisions or no presidential decisions on this issue. But whether there have been other unpublished decisions with the same taking the same position, I don't know. It's certainly something I could look into and get back to you on. I'm not aware, certainly, of any contradictory decisions. So, again, I want to focus on the fact that the family unity, I mean, program is even too grandiose a term for it. It's just a provision that created certain benefits for certain people. It didn't give them legal status in the in the United States. They had to continue to pursue their status application if they wanted to get legal status in the United States. The fact that they could leave and return with permission of the immigration authorities is no different than if they were present here illegally and they wanted to leave and come back. There is a provision called advanced parole where you can get permission to leave and come back and resume your illegal status here. So there's nothing really that different in their status other than they are protected from deportation during the period. Can I ask you a question about the first thing Mr. Finn indicated, and that's the invocation of Fifth Amendment. Yes, yes. I take it this is not a case where cancellation was sought on the heels of a criminal conviction, right? He did not. The answer to my question is yes, isn't it? Yes, I'm sorry. Yes. Can you imagine in any civil or criminal court in the United States happening what happened here? In terms of the invocation of the Fifth? In terms of a lawyer standing up and saying my client rests on his Fifth Amendment privilege not to incriminate himself, and a court in essence saying I don't recognize that. That I don't I don't agree that that's what happened here. The court said or a judge saying I won't accept counsel's invocation of it. I want your client to take the stand and assert the Fifth Amendment himself. Yeah, that's the discretion of the judge, whether he wants the witness to assert it himself. What's the authority for that? Let's look up. It's one of the cases, either Mays or not Hall, not Wall. I mean, or the Rudy Glanzer case. I'm sorry. I don't know. Oh, here it is. It's Mays. Yeah, it says it is within the discretion of the trial judge to permit counsel for the witness to invoke the privilege on his behalf. And when the witness in this case did take the stand, the first response he made was I think to a translator. Was there a translator? Yes, there was a translator, interpreter. I don't want to get myself in trouble. Right, right. But then he did have a perfectly acceptable way for an uneducated person who does not speak English to assert his Fifth Amendment rights. Yes. And he was allowed to assert it for the first few questions for which he asserted it. And then wouldn't the normal reaction of a fair minded jurist be to at that point say, will that be your position with respect to any question in this proceeding? Isn't that what normally happens in a courtroom? No, I know. I disagree that. Have you ever tried a criminal case? I have not tried a criminal case. I have worked in depositions and so forth where people have ever tried a civil case. Yes. To a jury? No. And in the civil cases you have tried, anyone ever assert the fifth? Not in depositions. Yes. Not in court. They had to assert it to each question. And that, in fact, deposition, that went on for several days of that. There was no judge there, correct? It was before a magistrate judge, actually, because we were under sort of supervision for discovery. And so, yes, he had to assert it for each question. And my understanding from the cases is that is the standard way of proceeding, because in order for the judge to ascertain whether the privilege is being properly asserted, they have to know what the questions are that the privilege is being asserted for. So that is the normal way to proceed. Normal way to proceed in a case where there's been no criminal conviction at all and where the government is trying to prove the basis for the cancellation through the mouth of the petitioner, right? Actually, in this case. The answer to my question is yes, isn't it? No. No, I think I disagree. In this case, he was an arriving alien who presented himself for admission at the border. In that case, he has the burden to prove his admissibility by beyond a doubt. And that's in, I can cite the statute, 1229A subsection C to capital A. He had the burden of proving his admissibility. So he had to come forward with evidence to show that he was admissible. And even if he deserted the fifth to all the questions in this case, the immigration judge would have been allowed to make adverse inferences. And since it was his burden to show his admissibility, he would have failed to meet that burden. So in this case, I think the procedure was correct. And he was, and in any event, he didn't assert the fifth, even though the attorney did say it. I have already advised him to do it. So the attorney was, and I realize I'm out of time. So if you want me to wrap up. In fact, our questions have taken you over your time. Thank you very much for your argument. Okay. Thank you. Do you have anything for rebuttal, Mr. Finn? Just a couple of things. At the time of the hearing, the burden was placed on the government to prove my client had been a smuggler. There's been a case that came out later called Altimirano that sort of reallocates the burden potentially in the removal proceeding. But at the time, even the government and the IJ, everybody agreed that the burden was on the government. And as Your Honor stated, you have, I think we have to look at the fact that my client was speaking through a translator, you know, unsophisticated in legal proceedings. And there's even a BIA case, a matter of Sandoval that I cited in my brief where the court recognized that those kinds of factors should be taken into consideration. Briefly, one thing I need to respond to what counsel said about the advanced parole, a person that's completely undocumented, illegal in the United States, cannot get advanced parole. Can they, they won't, the government won't give a person that's illegal permission to leave the country and then return. I've never seen that happen. This is another thing that bolsters, I believe, our argument that family unity is a status. It's obviously a status of the only person in the country that would have no status would be an illegal alien. So I'm out of time. You are. Thank you both for your argument. The case will be submitted for decision.
judges: Hawkins, Graber, Paez